Michael R. Lozeau (CA State Bar No. 142893)
Brian B. Flynn (CA State Bar No. 314005)
**LOZEAU DRURY LLP**
1939 Harrison Street, Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
Fax: (510) 836-4205
E-mail: michael@lozeaudrury.com
        brian@lozeaudrury.com

Eric J. Buescher (CA State Bar No. 271323)
M. Benjamin Eichenberg (CA State Bar No. 270893)
**SAN FRANCISCO BAYKEEPER**
1736 Franklin Street, Suite 800
Oakland, CA 94612
Tel:  (510) 735-9700
Fax: (510) 735-9160
E-mail: ben@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation, <br><br> Plaintiff, <br> v. <br> UNITED STATES FISH AND WILDLIFE SERVICE, a United States Government Agency; MARTHA WILLIAMS, in her official capacity as Director of U.S. Fish and Wildlife Service; and DEB HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior; <br><br> Defendants. | Civil No. <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

COMPLAINT

Plaintiff SAN FRANCISCO BAYKEEPER ("Baykeeper"), by and through its counsel, alleges as follows:

**INTRODUCTION**

1. This action challenges the UNITED STATES FISH AND WILDLIFE SERVICE's ("Service") failure to issue a final rule on the petition to list the Longfin Smelt (*Spirinchus thaleichthys*) (San Francisco Bay-Delta distinct vertebrate population segment) ("Longfin Smelt DPS") and failure to finalize critical habitat protection for the Longfin Smelt DPS within the Endangered Species Act's ("ESA") nondiscretionary, congressionally mandated deadline. The agency's failure delays crucial, lifesaving protections for this imperiled species, increasing its risk of extinction.

2. Plaintiff brings this lawsuit for declaratory and injunctive relief against the Service, MARTHA WILLIAMS in her official capacity as Acting Director of U.S. Fish and Wildlife Service, and DEB HAALAND in her official capacity as U.S. Secretary of the Interior, (collectively, "Defendants"), seeking an Order declaring that the Service violated the ESA by failing to timely finalize its proposed rule and a critical habitat designation for the Longfin Smelt DPS, and directing the Service to finalize its overdue rules and issue a critical habitat designation by a date certain.

3. Baykeeper seeks a declaratory judgment, injunctive relief, and the award of costs, including reasonable attorneys' fees.

4. The Longfin Smelt DPS is on the brink of extinction. The Service has recognized the dire plight of the Longfin Smelt DPS since 2012 when, after several years of litigation, the agency determined that listing was warranted. For the next eight years, through 2020, Defendants claimed that listing the Longfin Smelt DPS remained warranted but was precluded by other pending listing proposals.

5. Finally, just over one year ago, the Service issued a proposed rule to list the Longfin Smelt DPS as an endangered species. 87 Fed. Reg. 60,957 (Oct. 7, 2022) ("Proposed Rule").

6. Despite over a decade of knowledge that listing was warranted, the Service has once again missed a statutory deadline – this time to finalize its proposed rule listing the Longfin Smelt

DPS as endangered and issue a critical habitat designation for the species within one year of publication of the Proposed Rule.

7. The Longfin Smelt DPS languished on the Service's listing candidate list for over a decade. During that time, none of the safeguards and protections afforded listed species under ESA were brought to bear on the dramatic social and environmental forces that continue to drive the Longfin Smelt's slide toward extinction.

8. By further delaying the listing of the Longfin Smelt, Defendants are denying the species the protections necessary to counteract powerful interests arrayed against this critically endangered fish. Whether the Longfin Smelt will be extirpated from the San Francisco Bay Estuary is directly related to whether various resource agencies will be required to allow sufficient water flows through the Sacramento-San Joaquin River Delta ("Delta"). As long as Defendants continue to violate the law and postpone issuance of a Final Rule under the Endangered Species Act, the Longfin Smelt's habitat will continue to shrink, pushing the species further towards extermination.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision), and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201-2202; and 5 U.S.C. § 706(2).

10. Plaintiff provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A), by email and letter to the Service dated October 11, 2023. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

11. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(e) as Baykeeper is incorporated in California and its headquarters are located within the district, Baykeeper's members reside in this district, and no real property is involved in this action.

**PARTIES**

12. Plaintiff SAN FRANCISCO BAYKEEPER is a non-profit public benefit corporation organized under the laws of the State of California with its office located at 1736 Franklin Street, Suite 800, Oakland, California, 94612.

13. Baykeeper's approximately 5,000 members and supporters live and/or recreate in and around the San Francisco Bay area. Baykeeper's mission is to defend San Francisco Bay from the biggest threats and hold polluters and government agencies accountable to create healthier communities and help wildlife thrive. Baykeeper patrols on the water, investigates and stops polluters, and strengthens laws that protect the Bay. Baykeeper is dedicated to preserving, protecting, and defending the environment, wildlife, and natural resources of San Francisco Bay and its tributaries for the benefit of its ecosystems and communities. Baykeeper furthers its goals through education, advocacy, restoration, and directly initiates enforcement of environmental laws on behalf of itself and its members.

14. Baykeeper and its members are concerned with, and have concrete interests in, the conservation of imperiled species, including the Longfin Smelt DPS.

15. On behalf of itself and its members, Baykeeper has an interest in the effective implementation of the ESA and the timely listing of endangered or threatened species, including the timely listing of imperiled species for which listing petitions have been submitted.

16. Baykeeper's members include citizens, taxpayers, property owners, and residents, with recreational, educational, scientific, conservation, aesthetic, and/or spiritual interests in the species at issue in this suit and are similarly interested in the health of these species' habitat.

17. The interests of Baykeeper and its members in the Longfin Smelt DPS and its habitat are dependent upon the persistence of healthy and sustainable populations of the species in the wild. Unless the Longfin Smelt DPS is promptly protected under the ESA, it will continue to decline and likely will go extinct. Thus, the interests of Baykeeper and Baykeeper's members have been, are being, and will continue to be adversely affected by Defendants' failure to protect the Longfin Smelt DPS under the ESA.

18. Baykeeper brings this action on behalf of its organization, and its staff, and members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from the Longfin Smelt species and its habitat. Plaintiff's interests in protecting and recovering these species and their habitats are directly harmed by the Service's failure to issue timely findings.

19. Defendants' failure to protect the Longfin Smelt DPS under the ESA is also subverting Baykeeper's core mission to protect the Bay and its wildlife. As a consequence of Defendant's unlawful delay in protecting Longfin Smelt, Baykeeper has been compelled to expend resources (exclusive of this litigation) on alternative means of protecting the species, which has diverted time and resources that could and would have been spent on other activities that are central to Baykeeper's mission.

20. Continuing commission of the acts and omissions alleged herein will irreparably harm Baykeeper and one or more of its members, for which harm they have no plain, speedy or adequate remedy at law.

21. Baykeeper has one or more members who use, explore, research, and recreate in areas impacted by the Longfin Smelt DPS decision herein at issue and could sue in their own right. Baykeeper's members are suffering recreational, aesthetic, scientific, conservational, or other environmental injuries due to Defendants' unlawful decision and delay in adding the Longfin Smelt to ESA's endangered or threatened species list. Baykeeper has one or more members that endeavor to observe Longfin Smelt and have ongoing interests in the species and its habitat. Baykeeper has one or more members who have concrete plans to visit these species' habitats and try to observe them. Defendants' actions have harmed and continue to harm Baykeeper's members' interests in observing, studying, and otherwise enjoying the species and their habitats. Baykeeper's injuries-in-fact are fairly traceable to Defendants' conduct and would be redressed by the requested relief.

22. Defendants' violations of the ESA's nondiscretionary mandatory deadlines have delayed the ESA's protections for the Longfin Smelt, harming Baykeeper's and Baykeeper's members' interests in it. These injuries are actual, concrete injuries that are presently suffered by Baykeeper's members, are directly caused by Defendants' acts and omissions, and will continue unless

the Court grants relief. The relief sought would redress these injuries. Baykeeper and its members have no other adequate remedy at law.

23. Defendant U.S. FISH AND WILDLIFE SERVICE is an agency of the U.S. Department of the Interior, charged by the U.S. Department of the Interior with administering the ESA with respect to listing threatened and endangered plant and animal species, including the Longfin Smelt. The Secretary of the Interior has delegated administration of the ESA to the U.S. Fish and Wildlife Service. 50 C.F.R. § 402.01(b).

24. Defendant MARTHA WILLIAMS is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring that agency decisions comply with the ESA. Acting Director Williams is sued in her official capacity.

25. Defendant DEB HAALAND is the Secretary of the Department of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing decisions. Secretary Haaland is sued in her official capacity.

26. Defendants have abrogated their duty to ensure that the Longfin Smelt DPS is timely protected to avoid further decline and an increased risk of extinction, in violation of Section 4 of the ESA.

## STATUTORY FRAMEWORK

**The Endangered Species Act**

27. The ESA, 16 U.S.C. §§ 1531-1544, is a comprehensive federal statute declaring that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3); *see, also, TVA v. Hill*, 437 U.S. 153, 180 (1978). The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id*. at § 1531(b).

28. When enacting the ESA, Congress declared that "all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in

furtherance of the purposes of this Act." 16 U.S.C § 1531(c)(1). Congress further specifically mandated that the Secretary "review other programs administered by him and utilize such programs in furtherance of the purposes of this Act." *Id.* at § 1536(a)(1).

29. The ESA has a suite of substantive legal protections that apply to "species," 16 U.S.C § 1532(16) (defining "species"), once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id*. at § 1533(a)(3).

30. In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' "critical habitat." *Id*. at § 1536(a)(2).

31. ESA section 9 prohibits, among other actions, "any person" from "taking" protected animals without lawful authorization from the Service. *Id.* at §§ 1538(a)(1)(B), 1539; *see also id*. at § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* at § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* at § 1534; and authorize the Service to make federal funds available to states in order to assist in the conservation of endangered and threatened species, *id.* at § 1535(d).

**Listing Species as Endangered or Threatened Under the ESA**

32. Section 4 of the ESA requires that the Service list species as "endangered" or "threatened" if one or more of five listing factors is met based on the best available science. 16 U.S.C § 1533(a)(1), (b)(1)(A). "The term 'endangered species' means any species which is in danger of extinction throughout all or a significant portion of its range[,]" *id*. at § 1532(6), while "[t]he term 'threatened species' means any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. at § 1532(20).

33. To ensure that listing decisions are timely, Section 4 of the ESA sets forth a detailed process and strict timetable whereby interested persons may petition the Service to list a species as endangered or threatened. This includes nondiscretionary deadlines that require the Service to make up to three decisions in response to listing petitions within prescribed time frames. These three findings,

described below, are the 90-day finding, the 12-month finding, and the final listing determination. 16 U.S.C § 1533(b)(3)-(6).

34. Within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A).

35. If the Service determines in this "90-day finding" that the petition does not present substantial information indicating that listing may be warranted, the petition is denied and the process concludes.

36. If the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, which is known as a "status review." 16 U.S.C. § 1533(b)(3)(A).

37. Upon completion of the status review, and within one year from the date that it receives the petition, the Service must make a "12-month finding" with one of three determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded." 16 U.S.C § 1533(b)(3)(B).

38. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and take public comments on the proposed listing rule. *Id*. at § 1533(b)(3)(B)(ii).

39. Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id*. at § 1533(b)(6)(A). This is known as a "final listing rule."

40. In addition to the one-year deadline to make a final determination on a proposed listing rule, the Act also requires the Service to publish a critical habitat designation concurrently with listing or provide notice it is extending its designation deadline. If the Service determines that critical habitat is not then determinable, it may extend the one-year period by one additional year. *Id*. at §§

1533(a)(3)(A)(i), 1533(b)(6)(C).

## FACTUAL BACKGROUND

**The Longfin Smelt**

41.    The Longfin Smelt is an anadromous fish found in Pacific Coast bay, estuary, and nearshore coastal environments, from San Francisco Bay north to Cook Inlet, in south-central Alaska. The San Francisco Bay Estuary ("Estuary") supports the largest Longfin Smelt population in California, which is also a distinct population segment, and the species is a key part of the estuarine food web. Longfin Smelt were once one of the most abundant open-water fishes in the Estuary and were fished commercially. In recent years, the species' numbers have plummeted to record lows in the Estuary, and it is thought to be extirpated or nearing extirpation in other Northern California estuaries.

42.    Catastrophic declines in the Longfin Smelt population have been caused by poor management of the Estuary by Federal and State water regulators, which have allowed excessive water diversions and drastically reduced freshwater flow into San Francisco Bay. During the 1987-1992 drought, which coincided with a period of relatively large water diversions and exports from the Estuary and its watershed, Longfin Smelt abundance declined dramatically, reaching historically low levels in the early 1990s. The species partially recovered during the mid-to-late 1990s, when hydrological conditions improved, but the population decline resumed when dry conditions and increased water diversions prevailed during the early part of this century. The Estuary's Longfin Smelt population reached a new record low in 2015. Longfin Smelt abundance in 2020 (the most recent year of sampling) was less than 0.1 percent of the levels detected when sampling began in 1967, and the population has declined approximately 80 percent since it was listed as threatened by the State of California in 2009.

43.    Longfin Smelt population abundance in the Estuary is directly related to the amount of fresh water flowing out of the Delta (a.k.a., Delta outflow) during the winter and spring. In years when winter and spring flows are high, Longfin Smelt have better juvenile recruitment success and relatively high population abundance, as measured later in the year, while low winter-spring flows strongly correspond to declines in abundance. Longfin Smelt are about to be extirpated from the Estuary, and

the only thing that will save the species is quick, decisive action to keep enough water flowing out of the Delta to allow the smelt to survive.

**Delays by the Service to List the Longfin Smelt as Endangered or Threatened**

44. In November 1992, San Francisco Baykeeper and seven other organizations filed the original petition requesting the Service to list the Longfin Smelt DPS. On June 24, 1993, the Service published a 90-day finding that the petition presented substantial information indicating that the requested action may be warranted and triggering a formal status review for the Longfin Smelt. 58 Fed. Reg. 36184 (July 6, 1993). The Service then concluded that the Longfin Smelt DPS was not a distinct population segment and the original petition was ultimately denied.

45. In 2007, several organizations petitioned the Service to list the Longfin Smelt DPS as endangered under the federal ESA. Initially, the Service responded by denying federal protection to the Longfin Smelt DPS while promising to look at the status of the species as a whole.

46. In 2009, several organizations sued the Service for its denial, and in 2011, the Service announced it would rethink its decision on the Longfin Smelt DPS.

47. In 2012, the Service determined that the Longfin Smelt DPS was a distinct population segment and that protection of this population was warranted but listing was precluded because the listing of other species was a higher priority. 77 Fed. Reg. 19756 (Apr. 2, 2012). Thus, the Service added the Longfin Smelt DPS to ESA's "candidate" list.

48. From 2012 to 2022, the Longfin Smelt DPS remained on the candidate list. The Service took no further action to reconsider or move the listing forward. Instead, the Service repeatedly found, in every year, that protection of the Longfin Smelt DPS was warranted under the ESA, but (1) that such protection was precluded by other pending listing determinations and (2) that the Service was making expeditious progress to add or remove other species from the lists.

49. The Service issued multiple National Listing Workplans over this time that identified the Longfin Smelt DPS as a candidate species for listing that would either be proposed for listing or found not warranted for listing in subsequent fiscal years. Nevertheless, each year the listing determination was delayed, in spite of repeated findings that listing was fully funded and intended for

completion in the near future. *See, e.g.*, 85 Fed. Reg. 73175.

50. The Service in 2020 discussed how "the amount of resources available for completing the listing function" supported preclusion by focusing on the Service's overall budget for listing actions and its general insufficiency. 85 Fed. Reg. 73167. However, the Service did not explain how its overall budget precluded a listing rule for the Longfin Smelt, especially given that the Service funded the work for completion in FY 2020.

51. On April 8, 2021, Baykeeper filed a lawsuit to compel the Service to publish a finding and proposed rule regarding listing of the Longfin Smelt DPS. In a parallel case, CBD reached a settlement with the Service to do just that. *Center For Biological Diversity v. United States Fish & Wildlife Service, et al.*, Case No. 1:21-cv-00884-EGS (D.D.C. 2021). On October 7, 2022, the Service published its 2022 Proposed Rule as required by the settlement, which proposed to list the Longfin Smelt DPS as an endangered species. 87 Fed. Reg. 60,957 (October 7, 2022).

52. Baykeeper timely submitted comments in response to the Proposed Rule.

53. The deadline to make a final determination on the October 7, 2022 proposed listing rule for the Longfin Smelt DPS was October 7, 2023. That deadline has now passed.

54. Upon information and belief, the local Service staff tasked with reviewing and responding to comments made on the Proposed Rule had completed their work prior to the October 7, 2023 statutory deadline.

55. Upon information and belief, the Service received 21 comments, totaling roughly 113 pages plus attached materials, during both the initial and extended comment periods on the Proposed Rule. Attached materials consisted of roughly 2700 additional pages, many of which were documents already before, reviewed by, or available to the Service. It has now been more than 9 months since the last of these comments was received.

56. By letter dated October 11, 2023, Baykeeper provided the Service, Director Williams, and the Secretary of the Interior with written notice of their missed deadline pursuant to the requirements of the ESA and notified the Service, Director Williams, and the Secretary of the Interior of Baykeeper's intent to file this suit. A true and correct copy of Baykeeper's October 11, 2023 notice

letter to the Service and U.S. Department of the Interior is attached as Exhibit A.

57. Based on the many years of data gathered during the Service's unwarranted delay of the listing process for the Longfin Smelt DPS, Baykeeper is informed and believes that there is no "substantial disagreement regarding the sufficiency or accuracy of the available data relevant" to the proposed listing determination. Accordingly, any decision to further delay the final determination would not be warranted.

58. Due to the many years of delay by the Service in proceeding with the rulemaking for the Longfin Smelt DPS and the many years of data regarding the habitat needs of the species, Baykeeper is informed and believes that the Service could not justify a finding that critical habitat for the Longfin Smelt DPS is not determinable. Both the immediate listing of the Longfin Smelt DPS and the designation of its critical habitat are essential steps to thwart the continued downward spiral of its population towards extirpation and to put the Longfin Smelt on a path to recovery.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of the ESA for Failure to Publish a Timely Final Listing Determination**
**(Violation of ESA, 16 U.S.C. § 1533(a)(1), § 1533(b)(6)(A))**

59. Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

60. The ESA requires the Service to publish a final listing determination one year after it publishes a 12-month finding with a proposed listing determination.

61. Defendants have failed to perform their nondiscretionary duty to publish a timely final listing determination for the Longfin Smelt DPS, in violation of the ESA. 16 U.S.C. § 1533(b)(6)(A).

### SECOND CAUSE OF ACTION
**Violation of the ESA for Failure to Publish a Timely Critical Habitat Designation for Longfin Smelt DPS.**
**(Violation of ESA, 16 U.S.C. § 1533(a)(3)(A)(i), § 1533(b)(6)(C))**

62. Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

63. The ESA requires the Service to publish a critical habitat designation concurrently with listing or provide notice it is extending its designation deadline. If the Service determines that critical habitat is not then determinable, it may extend the one-year period by one additional year.

64. Defendants failed to perform their nondiscretionary duty to publish a timely final rule designating critical habitat for the Longfin Smelt DPS or, alternatively, making a determination to extend that deadline, in violation of the ESA. 16 U.S.C. § 1533(a)(3)(A)(i), § 1533(b)(6)(C).

**RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests this Court to grant the following relief:

(A) Declare that Defendants violated the ESA by (1) failing to issue a timely final listing determination for the Longfin Smelt DPS; and (2) failing to timely finalize its critical habitat designation for the Longfin Smelt DPS or make a determination to extend such critical habitat designation;

(B) Provide injunctive relief compelling Defendants to issue the final listing determination in the Federal Register by a date certain;

(C) Provide injunctive relief compelling Defendants to publish the critical habitat designation or extension in the Federal Register by a date certain;

(D) Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

(E) Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and;

(F) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: December 22, 2023

LOZEAU DRURY LLP

Michael R. Lozeau
Attorneys for Plaintiff

# EXHIBIT A



T 510.836.4200   1939 Harrison Street, Ste. 150   www.lozeaudrury.com
F 510.836.4205   Oakland, CA 94612   michael@lozeaudrury.com

October 11, 2023                                                VIA EMAIL AND CERTIFIED MAIL

The Honorable Debra Haaland                     Gary Frazer
Secretary of the Interior                       Assistant Director for Ecological Services
U.S. Department of the Interior                 U.S. Fish and Wildlife Service
1849 C Street, N.W.                             1849 C Street, N.W.
Washington, DC 20240                            Washington, D.C.  20240
exsec@ios.doi.gov                               gary_frazer@fws.gov

Martha Williams                                 Caitlin Snyder, Chief, Branch of
Director                                        Domestic Listing, U.S. Fish and Wildlife
U.S. Fish and Wildlife Service                  Service, MS: ES, 5275 Leesburg Pike,
1849 C Street, N.W.                             Falls Church, VA 22041–3803
Washington, DC 20240                            caitlin_snyder@fws.gov
martha_williams@fws.gov

Re:   Notice of San Francisco Baykeeper's Intent to Sue the Department of the Interior
      and United States Fish & Wildlife Service for Violation of the Endangered Species
      Act § 1533(b)(6)(A); Failure to Make a Timely Final Determination on the Proposed
      Listing Rule for the Longfin Smelt.

Dear Secretary Haaland, Director Williams, Assistant Director Frazer, and Chief Snyder:

   I am writing on behalf of San Francisco Baykeeper in regard to the Secretary's and U.S. Fish and Wildlife Service's (collectively "Service") most recent proposed rule to list the San Francisco Bay-Delta Distinct Population Segment of the Longfin Smelt (*Spirinchus thaleichthys*) ("Longfin Smelt DPS") as an endangered species ("2022 Proposed Rule"). 87 Fed. Reg. 60,957 (October 7, 2022). This letter serves as a sixty-day notice from San Francisco Baykeeper ("Baykeeper") of its intent to sue the Service for its failure to publish a final listing determination and critical habitat designation, or otherwise make a final determination on the pending proposed listing for the Longfin Smelt DPS, as required by statute. 16 U.S.C. § 1533(b)(6)(A). To the extent notice is required by the federal endangered species act ("ESA"), 16 U.S.C. § 1540(g)(2)(C), this notice satisfies those requirements.

   Baykeeper is a non-profit 501(c)(3) environmental organization, organized under the laws of California with its office at 1736 Franklin Street, Suite 800, Oakland, California 94612. Baykeeper has approximately 5,000 members and supporters, including many who live and/or recreate in and on San Francisco Bay and the Sacramento-San Joaquin River Delta. Baykeeper's mission is to defend the San Francisco Bay, including the Delta, from the biggest threats and hold polluters and government agencies accountable to create healthier communities and help wildlife thrive. Dr. Jonathan Rosenfield is the Science Director for Baykeeper and a leading expert on Longfin Smelt ecology and

San Francisco Baykeeper Notice of Intent to Sue
Re: Longfin Smelt
October 11, 2023
Page 2 of 5

behavior. Dr. Rosenfield has published peer-reviewed scientific studies of Longfin Smelt in San Francisco Bay and assisted in preparing the 2007 petition to list the Longfin Smelt. He has continued to conduct scientific research on the San Francisco Bay population of Longfin Smelt and review and comment on management activities and threats relating to this population's survival.

### I. The San Francisco Bay-Delta Distinct Population Segment of Longfin Smelt is on the Brink of Extirpation.

The Longfin Smelt is an anadromous fish found in bay, estuary, and nearshore coastal environments of the Pacific Coast, from San Francisco Bay north to Cook Inlet, in south-central Alaska. The San Francisco Bay Estuary ("Estuary") supports the largest Longfin Smelt population in California, which the US Fish and Wildlife Service has determined is a distinct population segment ("DPS"). Longfin Smelt were once one of the most abundant resident fishes in the Estuary and were fished commercially. In recent years, Longfin Smelt numbers have plummeted to record lows in the Estuary, and it is thought to be extirpated or nearing extirpation in other California estuaries.

Catastrophic declines in the Longfin Smelt DPS have been caused by poor management of the Estuary by Federal and State water regulators and water diverters, which have allowed and carried out excessive water diversions and drastically reduced freshwater flow into San Francisco Bay. During the 1987-1992 drought, which coincided with a period of relatively high volume diversions and water exports from the estuary and its watershed, Longfin Smelt abundance declined dramatically, reaching historically low levels in the early 1990s. The population partially recovered during the mid-late 1990s, when hydrological conditions improved, but the population decline resumed when dry conditions and increased water diversions prevailed during the early part of this century. The Estuary's Longfin Smelt population reached a record low in 2015. Longfin Smelt abundance in 2022 (the most recent year of sampling) was <0.5% of the levels detected when sampling began in 1967. Protections available under the federal ESA are necessary to prevent the extirpation of the Longfin Smelt DPS.

### II. Listing of Longfin Smelt DPS is long overdue as a result of repeated delays by the Service

At every stage of the federal ESA listing process, litigation has been necessary to compel the Service to meet its obligations to protect the Longfin Smelt DPS. In November 1992, Baykeeper and seven other organizations filed the original petition requesting the Service to list the Longfin Smelt. On June 24, 1993, the Service published its 90-day finding that the petition presented substantial information indicating that the requested action may be warranted and triggering a formal status review for the Longfin Smelt. 58 Fed. Reg. 36184 (July 6, 1993). The Service subsequently concluded that the San Francisco Estuary population of the Longfin Smelt was not a DPS and this original petition was ultimately denied.

In 2007, The Bay Institute (for which Dr. Rosenfield was consulting at the time), Center for Biological Diversity ("CBD"), and Natural Resources Defense Council again

San Francisco Baykeeper Notice of Intent to Sue
Re: Longfin Smelt
October 11, 2023
Page 3 of 5

petitioned the Service to list the Longfin Smelt DPS as endangered under the federal ESA. Initially, the Service responded by denying federal protection to the Estuary's population while promising to look at the status of the species as a whole. In 2009, The Bay Institute and CBD sued the Service for its denial, and in 2011, the Service announced it would rethink its decision. In 2012, the Service determined that the Estuary population was a DPS and that it *warranted* protection, but listing was precluded because the listing of other species was a higher a priority. 77 Fed. Reg. 19756 (Apr. 2, 2012). Thus, the Service added the Longfin Smelt DPS to the "candidate" list.

From 2012 to 2022, the Longfin Smelt DPS remained on the candidate list. The Service took no further action to reconsider or move the listing forward despite the Longfin Smelt DPS's inclusion in National Listing Workplans as a species targeted for completion. Instead, the Service repeatedly found, in every year, that the Longfin Smelt DPS was warranted for protection under the ESA, but that such protection was precluded by other pending listing determinations and that the Service was making expeditious progress to add or remove other species from the lists.

On April 8, 2021, Baykeeper filed a lawsuit to compel the Service to publish a finding and proposed rule regarding listing of the Longfin Smelt DPS. In a parallel case, CBD reached a settlement with the Service to do just that. *Center For Biological Diversity v. United States Fish & Wildlife Service, et al.*, Case No. 1:21-cv-00884-EGS (D.D.C. 2021). On October 7, 2022, the Service published its 2022 Proposed Rule, which proposed to list the Longfin Smelt DPS as an endangered species. 87 Fed. Reg. 60,957 (October 7, 2022).

Because the Service's initial determination was to list the Longfin Smelt DPS as an endangered species, 16 U.S.C. § 1533(b)(6)(A) requires that:

> Within the one-year period beginning on the date on which general notice is published in accordance with paragraph (5)(A)(i) regarding a proposed regulation, the Secretary shall publish in the Federal Register--
> (i) if a determination as to whether a species is an endangered species or a threatened species, or a revision of critical habitat, is involved, either--
> (I) a final regulation to implement such determination,
> (II) a final regulation to implement such revision or a finding that such revision should not be made,
> (III) notice that such one-year period is being extended under subparagraph (B)(i), or
> (IV) notice that the proposed regulation is being withdrawn under subparagraph (B)(ii), together with the finding on which such withdrawal is based….

See *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 1902703, at *2 (N.D. Cal. Apr. 28, 2008), citing 16 U.S.C. § 1533(b)(6) ("After publication of a notice and proposed rule in the *Federal Register,* the Secretary of the Interior must act on the rule within one year of the date of its publication by promulgating a final rule, withdrawing the proposed rule, or extending the one-year time period for not more than six months").

San Francisco Baykeeper Notice of Intent to Sue
Re: Longfin Smelt
October 11, 2023
Page 4 of 5

"This is a mandatory, nondiscretionary duty which may be enforced by citizen suit." *Envtl. Def. Ctr. v. Babbitt,* 73 F.3d 867, 871 (9th Cir.1995). Any extension pursuant to Section 1533(b)(6)(A)(i)(III) is limited to six months and only when the Secretary can find that "there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination…." 16 U.S.C. § 1533(b)(6)(A)(i)(III), 1533(b)(6)(A)(iii).

In addition to the one-year deadline to make a final determination on a proposed listing rule, the Act also sets a deadline for designating critical habitat:

> A final regulation designating critical habitat of an endangered species or a threatened species shall be published concurrently with the final regulation implementing the determination that such species is endangered or threatened…

16 U.S.C. § 1533(b)(6)(C). This concurrent one-year deadline to designate critical habitat can be extended for no more than one additional year if the Secretary has evidence to:

> deem[] that--
> (i) it is essential to the conservation of such species that the regulation implementing such determination be promptly published; or
> (ii) critical habitat of such species is not then determinable, in which case the Secretary, with respect to the proposed regulation to designate such habitat, may extend the one-year period specified in subparagraph (A) by not more than one additional year, but not later than the close of such additional year the Secretary must publish a final regulation, based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat.

16 U.S.C. § 1533(b)(6)(C).

The deadline to make a final determination on the October 7, 2022 proposed listing rule for the Longfin Smelt DPS was October 7, 2023. That deadline has now passed.

Based on the many years of data gathered during the Service's unwarranted delay of the listing process for the Longfin Smelt DPS, Baykeeper is informed and believes that there is no "substantial disagreement regarding the sufficiency or accuracy of the available data relevant" to the proposed listing determination. Accordingly, any decision to further delay the final determination for six months would not be warranted. 16 U.S.C. § 1533(b)(6)(A)(i)(III). Baykeeper hereby notifies the Service that it intends to challenge any such unwarranted determination.

Based on the continuing high risk of extirpation of the Longfin Smelt DPS, Baykeeper also is informed and believes that there would be no evidentiary basis for the Service to reverse its proposed rule (and more than a decade of determinations that the Longfin Smelt DPS is warranted for listing) by making a determination not to list the Longfin Smelt DPS. Accordingly, Baykeeper hereby notifies the Service that it intends to challenge any determination not to proceed with the listing.

San Francisco Baykeeper Notice of Intent to Sue
Re: Longfin Smelt
October 11, 2023
Page 5 of 5

Lastly, also as a result of the many years of delay by the Service in proceeding with the rulemaking for the Longfin Smelt DPS and the many years of data regarding the habitat needs of the species, Baykeeper is informed and believes that the Service could not justify a finding that critical habitat for the Longfin Smelt DPS is not determinable. Both the immediate listing of the Longfin Smelt DPS and the designation of its critical habitat are essential steps to thwart the continued downward spiral of its population towards extirpation and to put the Longfin Smelt on a path to recovery.

### III.    Conclusion.

If the Secretary does not make a final determination for the Longfin Smelt DPS within the next 60 days, Baykeeper intends to file suit. Please contact me if you have any questions regarding the issues raised in this notice or would otherwise like to discuss this matter.

Sincerely,

*[signature]*

Michael R. Lozeau
Lozeau Drury LLP
on behalf of San Francisco Baykeeper