1
2
3
4
5
6
7
8
9
10

United States District Court
Northern District of California

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE<br>SERVICE, et al.,<br><br>Defendants. | Case No. 23-cv-06601-LB<br><br>**ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT IN PART**<br><br>Re: ECF No. 11 |

## INTRODUCTION

This case concerns the proposed listing of the longfin smelt DPS as an endangered species by the U.S. Fish and Wildlife Service. Plaintiff San Francisco Baykeeper, an advocacy organization, sued the federal defendants because the Service did not meet its one-year statutory deadline under the Endangered Species Act (ESA) to publish its final listing determination on its proposed rule to list the smelt as endangered, as required by the Endangered Species Act (ESA). 16 U.S.C. § 1533(b)(6)(A)(i). The plaintiff moved for summary judgment on its two claims: (1) a violation of the ESA, *id.* § 1533(b)(6)(A), for failure to publish a timely final listing determination, and (2) a violation of the ESA, *id.* § 1533(a)(3)(A) & (b)(6)(C), for failure to publish a timely critical-habitat determination. It asks the court to compel the issuance of the final listing determination within fourteen days. The agency does not dispute claim one, contends that claim two is premature because there is no deadline until it issues its final listing determination, and asks for an order

directing it to complete the final listing determination by July 24, 2024, which is the time it needs to finish its remaining steps.

The court grants the plaintiff summary judgment on claim one, denies summary judgment for claim two (with the caveat that the government agreed to an accommodation on this issue, as discussed below), and orders the Service to complete its final listing determination by July 24, 2024.

**STATUTORY SCHEME**

**1.  The ESA Listing Process**

The ESA "provide[s] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] provide[s] a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). The Act directs the Secretaries of the Interior and Commerce to determine whether a particular species should be listed as "threatened" or "endangered, *id.* § 1533(a)(1), and to designate "critical habitat" for listed species, *id.* § 1533(a)(3)(A)(i). The Secretary of the Interior has jurisdiction over the longfin smelt DPS and has delegated her ESA responsibilities to the U.S. U.S. Fish and Wildlife Service. 50 C.F.R. § 402.01(b).

Any "interested person" may petition the Service to list a species as threatened or endangered. *Id.* § 1533(b)(3)(A); 50 C.F.R. § 424.14(a). "To the maximum extent practicable," the Service must make a finding within ninety days "as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(h)(1). If the Secretary concludes in its ninety-day filing that the action requested in the petition may be warranted, then it must "promptly commence a review of the status of the species concerned." 16 U.S.C. § 1533(b)(3)(A). Within twelve months "after receiving a petition . . . present[ing] substantial information" that listing may be warranted, the Secretary must make a finding that the petitioned action is (a) warranted, (b) not warranted, or (c) warranted, but further action is precluded by work on higher-priority actions. *Id.* § 1533(b)(3)(B).

The twelve-month finding must be made "solely on the basis of the best scientific and commercial data available to [the Secretary] after conducting a review of the status of the species

and after taking into account those efforts, if any, being made by any State or foreign nation . . . to protect [the] species." *Id.* § 1553(b)(1)(A). If the Service concludes that listing is "not warranted," then the listing process ends. If the Service concludes that the listing is "warranted," then it must promptly publish a rule proposing the listing of the species. *Id.* § 1533(b)(3)(B)(ii). If the Service concludes that the listing is "warranted but precluded," then it must find that pending proposals preclude the timely promulgation of a final regulation implementing the petitioned action and that "expeditious progress is being made to add qualified species" to the threatened or endangered list and to remove species that are no longer qualified. *Id.* § 1533(b)(3)(B)(iii)(I–II); 50 C.F.R. § 424.14(h)(2)(iii)(A–B). (This warranted-but-precluded status renders the species in the petitioned action "candidate species."[1])

If the Service concludes that listing is warranted, then it has one year to do one of three things: (1) "publish a final regulation to implement such determination," 16 U.S.C. § 1533(b)(6)(A)(i); (2) "notice that the proposed regulation is being withdrawn . . . together with the finding on which such withdrawal is based," *id.*; or (3) extend the one-year period for an additional six months, *id.* § 1533(b)(6)(B)(i), (b)(6)(A)(i)(III).

## 2.  The ESA "Critical Habitat" Listing Process

The ESA also directs the Service to designate critical habitat for an endangered or threatened species. It defines "critical habitat" as

> (i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section 1533 of this title, on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and
>
> (ii) [the] specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 1533 of this title, upon a determination by the Secretary that such areas are essential for the conservation of the species.

---

[1] Opp'n – ECF No. 25 at 10. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

1   *Id.* § 1532(5)(A). Any designation of critical habitat must be based on "the best scientific data

2   available" and "tak[e] into consideration the economic impact, the impact on national security, and

3   any other relevant impact" of the designation. *Id.* § 1533(b)(2). "To the maximum extent prudent

4   and determinable," the Service must designate such critical habitat concurrently with a final listing

5   determination that a species is threatened or endangered. *Id.* § 1533(a)(3)(A).

6       The concurrent designation of critical habitat at the time of a final listing decision is not

7   required in two circumstances. First, the Service may find that the designation of critical habitat

8   "would not be prudent" in five circumstances (such as, it would not benefit the species). 50 C.F.R. §

9   424.12(a)(1). Second, it may find that critical habitat is "not determinable" at the time of the final listing

10  (because there is insufficient data to perform required analyses or the biological needs are not known

11  sufficiently to identify a critical habitat). *Id.* § 424.12(a)(2). If critical habitat is not determinable, the

12  Service may postpone designating critical habitat by one year, but a final designation of critical habitat

13  "based on such data as may be available at that time," and "to the maximum extent prudent," must be

14  completed "not later than the close of such additional year." 16 U.S.C. § 1533(b)(6)(C)(ii).

15

16  **3.   ESA "Citizen Suit" Provision**

17      The ESA allows any person to sue the Service when "there is alleged a failure of the Secretary

18  to perform any act or duty [under section 4] which is not discretionary with the Secretary" *Id.* §

19  1540(g)(1)(C).

20                                   **STATEMENT**

21      After the plaintiff and seven other organizations filed their petition, the Service issued its

22  ninety-day finding for the longfin smelt DPS on June 24, 1993, stating that the petition presented

23  substantial information indicating that the requested listing action may be warranted. 58 Fed. Reg.

24  36184 (July 6, 1993). In its twelve-month finding, it held that the petitioned action was not

25  warranted. 59 Fed. Reg. 869 (Jan. 6, 1994). After several organizations submitted another petition,

26  the Service ultimately determined on April 2, 2012, that the action was warranted but that listing

27  was precluded due to higher-priority actions. 77 Fed. Reg. 19756 (Apr. 2, 2012). The Service

28

United States District Court
Northern District of California

added the longfin smelt DPS to the list of candidate species and thereafter reevaluated its status each year pursuant to 16 U.S.C. § 1533(b)(3)(C)(i).[2]

In compliance with a court-approved settlement agreement, the Service published a proposed listing rule for the longfin smelt DPS on October 7, 2022, and concluded that listing was warranted. 87 Fed. Reg. 60957, 60963 (Oct. 7, 2022). Its statutory deadline to issue its final listing determination thus was October 7, 2023. It is undisputed that it has not issued its final listing determination or proposed a critical-habitat designation for the longfin smelt DPS.[3]

The Service's process for its final listing determination includes a drafting process and a review process at the regional and national levels.[4] When it publishes a proposed listing rule, the Service must provide a comment period (typically for sixty days) to allow public comment. Field and regional Service staff evaluate and respond to each substantive comment and piece of information received.[5] Then, regional Service staff (or other designated staff) draft a final determination about whether to list the species.[6] After the field and regional staff and leadership review the draft final determination, the Service's regional legal counsel conducts a review.[7] After the regional review is complete, then staff at the Service's headquarters in Washington, D.C. review the determination. The headquarters review has five levels of approval and takes about three months.[8]

Here, the San Francisco–Delta Fish and Wildlife Office and the Service's Region 8's regional office opened a notice-and-comment period that ended on December 6, 2022. In response to a public-hearing request, the Service reopened the comment period and held a public hearing. The new comment period ended on March 29, 2023. It continued to receive substantive comments even after the new comment period closed and has received over one thousand substantive comments.[9]

---

[2] *Id.* at 12.

[3] *Id.* at 14.

[4] Allen Decl. – ECF No. 25-1 at 2–3 (¶¶ 6–7), 5 (¶ 15).

[5] *Id.* at 2–3 (¶ 6).

[6] *Id.* at 3 (¶ 7).

[7] *Id.* at 5 (¶ 15).

[8] Shultz Decl. – ECF No. 25-2 at 2–3 (¶¶ 4–6).

[9] Allen Decl. – ECF No. 25-1 at 1–3 (¶¶ 1, 6).

United States District Court
Northern District of California

Regional staff have been diligently reviewing and developing responses to these comments, and (as of March 13, 2024) were completing the drafting of the longfin smelt DPS final determination.[10] The draft final determination will (1) summarize and analyze the scientific information relevant to the statutory and regulatory requirements governing the Service's ESA Section 4 classification process and (2) provide responses to the comments received during peer review of the Species Status Assessment report and the public comments.[11] Regional managers and legal counsel will review the completed determination in early March through mid to late April. Headquarters review is slated for the three months that follow the completion of the regional review.[12]

At the regional level, the Fish and Wildlife Office does not have staff dedicated to ESA listing work. Those assigned to the smelt project have other high-priority ESA projects (some court ordered). The office has twenty-three listing actions to complete in fiscal years 2024 and 2025.[13]

At the headquarters level, in fiscal years 2024 and 2025, the Service has court-ordered deadlines to complete two final critical-habitat designations, three proposed critical-habitat designations, and twenty-six twelve-month findings. In addition to court-ordered actions, in fiscal year 2024, the Service is committed to meeting the deadlines for approximately eighty Section 4 listing determinations and meeting the statutory deadlines for any related rules.[14]

All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(b)(1).[15] The court held a hearing on April 4, 2024.

## ANALYSIS

Because the ESA does not have an independent standard or scope of review, the court reviews the Service's finding under the Administrative Procedures Act (APA). *Wildwest Inst. v. Kurth*, 855 F.3d 995, 1002 (9th Cir. 2017) ("The [APA] governs our review of agency actions under the ESA.).

---

[10] *Id.* at 2–3 (¶¶ 6–7), 5–6 (¶ 15).

[11] *Id.* at 2–3 (¶¶ 6–7).

[12] Schultz Decl. – ECF No. 25-2 at 2–3 (¶ 4).

[13] Allen Decl. – ECF No. 25-1 at 6 (¶ 16).

[14] Schultz Decl. – ECF No. 25-2 at 4 (¶ 9).

[15] Consents – ECF Nos. 10, 23.

United States District Court
Northern District of California

The summary-judgment review of the agency decision here involves no disputed facts that the court must resolve. Instead, the issue is the agency's undisputed failure to issue its final listing decision by the statutory deadline of October 7, 2023.[16] "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed. . . ." 5 U.S.C. § 706(1); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1178 (9th Cir. 2002) ("The Service's failure to complete the listing determinations within the mandated time frame compelled the court to grant injunctive relief. The court had no discretion to consider the Service's stated priorities.") "[T]raditional preliminary injunction analysis does not apply to injunctions issued pursuant to the ESA. Once a suit is brought against the Secretary for violating a non-discretionary deadline under the ESA, a district court must issue an injunction." *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 1902703, at *2 (N.D. Cal. Apr. 28, 2008) (citing *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793–94 (9th Cir. 2005)).

The plaintiff asks the court to order the Service to complete its final listing determination within fourteen days and to either designate critical habitat or give notice of an extension.[17] The defendants ask for an order requiring the Service to complete its listing determination by July 24, 2024, and, if the court disagrees that the claim about critical habitat is premature, propose December 11, 2024, as a feasible date.[18] The court orders the July 24 deadline and, with the government's agreement at the April 4 hearing, memorializes the agreement to the December 11 deadline.

## 1. Listing Determination

Given the substantial work that the defendants must accomplish in 2024 (as set forth in the Statement), the court orders the defendants' proposed deadline.

The parties do not dispute that the court has equitable discretion, even with a statutory

---

[16] Opp'n – ECF No. 25 at 14.

[17] Reply – ECF No. 26 at 5, 16.

[18] Opp'n – ECF No. 25 at 14, 26; Allen Decl. – ECF No. 25-1 at 4–9 (¶¶ 10–19); Schultz Decl. – ECF No. 25-2 at 2–5 (¶¶ 3–11).

United States District Court
Northern District of California

deadline.[19] The plaintiff's main argument is that the Service has not met its "exceptionally heavy burden" to demonstrate that an expedited deadline (either its fourteen days or, as a compromise, thirty days) is impossible or infeasible.[20] The defendants counter that it is inequitable and inappropriate to order an injunction with a deadline that the defendants cannot feasibly meet.[21] Both cite *Sierra Club v. Thomas* to support their positions. 658 F. Supp. 165, 172 (N.D. Cal. 1987).

Given the sheer heft of work to be accomplished regionally and nationally in 2024, the court allows the defendants the time that they propose. *Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 178 (D.D.C. 2006) ("Congress did not limit district courts' authority to provide equitable relief under the ESA, and indeed, specifically reserved their traditional authority to fashion appropriate equitable relief.") The plaintiff cites cases with a shorter time period, but they are distinguishable. In *Ctr. for Biological Diversity v. Kempthorne,* for example, draft final rules had been completed, and the defendants offered no specific facts to justify the existing delay or further delay. No. C 08-1339 CW, 2008 WL 190270, at *3 (N.D. Cal. Apr. 28, 2008) (ordered final listing rule in seventeen days). Here, the Service has offered specific facts showing why the process is taking time at the regional level and describes a process at headquarters that is needed, given the overall amount of work in 2024. Budgetary and manpower constraints and the need to sufficiently evaluate complex technical and scientific issues support the defendants' proposed timeline. *Nat'l Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 712–13 (D.C. Cir. 1974).

The court denies the plaintiff's request to make the final listing rule effective immediately. Under 5 U.S.C. § 553(d), a final rule is published "not less than 30 days" before its effective date "except . . . as otherwise provided by the agency for good cause found and published with the rule" The thirty-day period "give affected parties time to adjust their behavior before the final rule takes effect. This is sensible; until the final rule is published, the public is not sure of what the rule will be or when the rule will actually be promulgated. In addition, a window of time usually

---

[19] Opp'n – ECF No. 25 at 17–18; Reply – ECF No. 26 at 5, 13.

[20] Reply – ECF No. 26 at 5.

[21] Opp'n – ECF No. 25 at 18.

1    causes no harm." *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1485 (9th Cir. 1992).

2

3    **2.   Critical-Habitat Determination**

4        The issue is premature: as the legal standard set forth above demonstrates, the Secretary

5    generally must concurrently designate critical habitat (absent a special circumstance) when it

6    makes its final listing determination. 16 U.S.C. § 1533(a)(3)(A)(i). Nonetheless, at the hearing, as

7    a compromise, the government agreed to comply with a deadline of December 11, 2024 (assuming

8    that it does not concurrently designate critical habitat with any final listing determination).

9

10

11                                    **CONCLUSION**

12       The court grants the plaintiff summary judgment on claim one, denies it on claim two, and

13   orders the defendants to complete the final listing determination by July 24, 2024. The defendants

14   agreed that if the Service concludes that listing is warranted, and it does not designate critical

15   habitat concurrently, then it will do so by December 11, 2024.

16       This order seemingly resolves the entire case. By April 11, 2024, the parties must file a

17   proposed judgment (and email a copy to lbpo@cand.uscourts.gov) or submit a statement with their

18   views on the procedural next steps in the case.

19       **IT IS SO ORDERED.**

20       Dated: April 5, 2024

21                                    _____

22                                    LAUREL BEELER
                                     United States Magistrate Judge
23

24

25

26

27

28

United States District Court
Northern District of California